# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| UNITED PARCEL SERVICE, INC., | )<br>)<br>) No. 25-641 T<br>) |
| Plaintiff, | ) |
| vs. | )<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Defendant. | )<br>) |

## COMPLAINT

1. Plaintiff, United Parcel Service, Inc. ("UPS" or "Plaintiff") seeks to recover from the Defendant, the United States of America, the sum of $16,122,353.94 in overpayment interest and any additional amounts owed to Plaintiff under section 6611 of the Internal Revenue Code in connection with Plaintiff's overpayment of tax for its 2017 and 2018 tax years.[1]

2. This claim for overpayment interest arises from the following actions of the Internal Revenue Service ("IRS").

   a. The IRS retained Plaintiff's $120,312,024 overpayment of its entire tax liability for 2017, benefited from the use of Plaintiff's funds, and:

      i. refunded part of that overpayment in 2019;

      ii. credited parts of that overpayment in 2019, 2020, 2021, 2022, 2023, and 2024 to satisfy tax obligations due in those later years; and

---

[1] Unless otherwise stated, all "section" references herein are to the Internal Revenue Code of 1986 (26 U.S.C.), as amended. All references to "regulations," "Treasury Regulations," and "Treas. Reg." are to the Income Tax Regulations (26 C.F.R.) implementing the Code.

  iii. under its publicly announced policy, will credit the remaining overpayment amount on May 1, 2025 to satisfy a tax obligation due on that date.[2]

 b. The IRS retained $56,888,215 of Plaintiff's 2018 overpayment of its entire tax liability for 2018, benefited from the use of Plaintiff's funds, and:

  i. credited parts of that overpayment in 2020, 2021, 2022, 2023, and 2024 to satisfy tax obligations due in those later years, and

  ii. under its publicly announced policy, will credit the remaining overpayment amounts on May 1, 2025 and April 15, 2026 to satisfy tax obligations due on those dates.

3. Plaintiff is entitled to overpayment interest in at least the amount of $16,122,353.94 pursuant to section 6611, plus additional interest thereon according to law because Defendant improperly used Plaintiff's overpayments to satisfy tax obligations that became due in future tax years.

In support of its claim, Plaintiff alleges as follows:

## THE PARTIES

4. Plaintiff is a corporation, organized under the laws of the State of Delaware, with its principal place of business and principal office in Atlanta, Georgia.

5. Plaintiff's taxpayer identification number is, and was for all tax years referenced herein, ▮▮▮▮0149.

6. Plaintiff is now, and was during all of the tax years referenced herein, the common parent of an affiliated group of corporations that have elected to file consolidated federal income

---

[2] Plaintiff reserves the right to amend this Complaint to include additional claims for overpayment interest attributable to the IRS's retention and use of Plaintiff's overpayments of its entire tax liability for 2017 and for 2018, to satisfy MRT installment(s) that become due after the date of the filing of this Complaint.

tax returns for the tax years at issue and is therefore the sole agent that is authorized to act in its own name with respect to all matters related to the tax liability for those consolidated return years under Treas. Reg. § 1.1502-77(a)(1).

7. Plaintiff maintains its books and records and files its federal income tax returns on a calendar year basis.

8. Plaintiff timely filed Form 1120 (U.S. Corporation Income Tax Return) for each of its 2017 and 2018 tax years with the IRS Service Center in Ogden, Utah on September 21, 2018 and October 1, 2019, respectively. Plaintiff timely filed consolidated federal income tax returns for each of the other tax years referenced herein.

9. Defendant is the United States of America. All action or inaction by Defendant relating to the subject matter of this action has been in full or in part through its agents and employees in the IRS.

## JURISDICTION

10. This Court has jurisdiction over this action under section 6611 and 28 U.S.C. § 1491(a)(1).

11. Plaintiff is filing this complaint within the period of time specified in 28 U.S.C. §§ 2401 and 2501.

## STATUTORY BACKGROUND

<u>Overpayment Interest Under Section 6611</u>

12. Section 6611(a) requires the IRS to pay interest "upon any overpayment in respect of any internal revenue tax at the overpayment rate established under section 6621."

13. When the IRS credits an overpayment against a liability, interest accrues "from the date of the overpayment to the due date of the amount against which the credit is taken." Section 6611(b)(1); Treas. Reg. § 301.6611-1(h)(1).

14. When the IRS refunds an overpayment, interest accrues "from the date of the overpayment to a date … preceding the date of the refund check by not more than 30 days[.]" Section 6611(b)(2).

15. The date of the overpayment is the date on which the taxpayer's "entire tax liability has been satisfied." Treas. Reg. § 301.6611-1(b). For this purpose, a payment of estimated income tax is deemed to have been paid on the last day prescribed for filing an income tax return, determined without regard to any extension of time for filing. Treas. Reg. § 301.6611-1(d); § 301.6513-1(a).

Overpayments Under Section 6402 and 6403

16. Section 6402(a) authorizes the IRS to credit an overpayment and any overpayment interest accrued thereon "against any outstanding liability for any tax (or for any interest, additional amount, addition to the tax, or assessable penalty) owed by the person making the overpayment." Treas. Reg. § 301.6402-1. The IRS must refund any remaining overpayment, subject to special rules allowing for offsets against limited types of debts other than federal income tax. Section 6402(a).

17. A taxpayer may elect to apply all or part of an overpayment for a taxable year towards the taxpayer's estimated tax liability for the immediately succeeding taxable year. Section 6402(b).

18. Section 6403 provides a narrow rule for certain overpayments of "a tax payable in installments." If a taxpayer "has paid as an installment of the tax more than the amount determined

4

to be the correct amount of such installment, the overpayment shall be credited against the unpaid installments, if any." If the overpayment exceeds the amount of remaining installments, the IRS must credit or refund the balance in accordance with section 6402. Treas. Reg. § 301.6403-1.

The Mandatory Repatriation Tax (Section 965)

19. On December 22, 2017, Congress enacted the Tax Cuts and Jobs Act of 2017 ("TCJA"). Pub. L. No. 115-97, 131 Stat. 2054. The TCJA included a "Mandatory Repatriation Tax" or MRT, "a one-time, backward-looking tax" on "some American shareholders of American-controlled foreign corporations." *Moore v. United States*, 602 U.S. 572, 578-80 (2024). The MRT was codified at section 965 of the Internal Revenue Code and is commonly referred to as the "section 965 transition tax."

20. Congress permitted taxpayers to elect to pay the MRT in installments over eight years, with no interest charge. I.R.C. § 965(h)(1); Treas. Reg. § 1.965-7(b); H.R. Rep. No. 115-466, 611, 616 (Dec. 15, 2017) (Conf. Rep.).

21. The first MRT installment was due on the due date for a taxpayer's federal income tax return for the year with respect to which the MRT was computed, without regard to any extension of time. After a taxpayer's first installment of the MRT, each successive installment is due in the year following the previous installment. Treas. Reg. § 1.965-7(b)(1)(iii)(A).

22. On March 13, 2018, the IRS published an online set of Frequently Asked Questions, providing guidance to taxpayers regarding reporting MRT liability on their 2017 federal income tax returns. INTERNAL REVENUE SERVICE, https://www.irs.gov/newsroom/questions-and-answers-about-reporting-related-to-section-965-on-2017-tax-returns (March 13, 2018) ("2017 FAQs"). As initially issued, the 2017 FAQs advised taxpayers to make separate payments for (i) the federal income tax owed for 2017 without regard to the MRT and for (ii) tax owed resulting

only from the MRT. 2017 FAQs, Q&A 10. The 2017 FAQs advised taxpayers to pay their MRT by either wire transfer or check or money order—not via the Electronic Federal Tax Payment System ("EFTPS"), as required for regular tax—and to clearly identify such payments as section 965 tax in accordance with the 2017 FAQs. *Id.*

23. On April 13, 2018, the IRS revised the 2017 FAQs. As modified, the 2017 FAQs stated that "[a] taxpayer may not receive a refund or credit of any portion of properly applied 2017 tax payments unless and until the amount of payments exceeds the entire unpaid 2017 income tax liability, including all amounts to be paid in installments under section 965(h) in subsequent years." 2017 FAQs, Q&A 14. The 2017 FAQs announced that, if a taxpayer paid 2017 federal income tax in excess of the aggregate of its regular tax and its first section 965(h) installment, the IRS would apply that excess "to the next successive annual installment (due in 2019) (and to the extent such excess exceeds the amount of such next successive annual installment due, then to the next such successive annual installment (due in 2020), etc.) pursuant to an election under section 965(h)." *Id.*

24. On or about March 11, 2019, the IRS issued a set of frequently asked questions providing guidance to taxpayers regarding reporting MRT liability on their 2018 federal income tax returns. INTERNAL REVENUE SERVICE, https://www.irs.gov/newsroom/questions-and-answers-about-tax-year-2018-reporting-and-payments-arising-under-section-9652017 (April 13, 2018) ("2018 FAQs"). The 2018 FAQs advised taxpayers to make separate payments for the federal income tax owed for their 2018 regular tax and an installment of the MRT. 2018 FAQs, Q&A 2. The 2018 FAQs advised taxpayers to pay the MRT by EFTPS, electronic funds withdrawal, wire transfer, or a mailed check or money order and to clearly identify such payments as section 965 tax in accordance with the 2018 FAQs. *Id.*

6

25.     The Internal Revenue Manual sets forth the IRS's internal procedure for processing a taxpayer's MRT installments. *See* I.R.M. § 21.5.13.2. Under that procedure, the IRS applies an "administrative credit" on the account of a taxpayer that elects under section 965(h) to pay the MRT in installments, equal to the aggregate amount of MRT installment payments that are not yet due. *Id.* at (12). This administrative credit is identified on a taxpayer's account transcript using transaction code ("TC") 766. *Id.*[3] The administrative credit prevents the IRS systems from issuing balance due notices for MRT installment amounts that are not due until subsequent years. I.R.M. § 21.5.13.2.4(4). As a taxpayer pays each installment, the IRS reduces the administrative credit. I.R.M. § 21.5.13.2.4(1). Each reduction is identified using TC 767. *Id.*

## FACTUAL BACKGROUND

26.     Because Plaintiff was a shareholder in certain foreign corporations with previously untaxed earnings and profits, Plaintiff was subject to the MRT.

   a.  As a shareholder in certain foreign corporations with a calendar year end, Plaintiff was subject to the MRT, computed with respect to tax year 2017.

   b.  In addition, as a shareholder in certain foreign corporations with a fiscal year end, Plaintiff was subject to a second MRT liability, computed with respect to tax year 2018.

27.     Plaintiff timely elected on its 2017 and 2018 federal income tax returns to pay each MRT liability in installments pursuant to section 965(h).

---

[3] "The IRS's processing system, the Integrated Data Retrieval System (IDRS), uses a system of codes to identify a transaction the IRS is processing and to maintain a history of actions posted to a taxpayer's account. These Transaction Codes (TCs) basically provide processing instructions to the IRS's system." IRS, Taxpayer Advocate Service, *Decoding IRS Transcripts and the New Transcript Format: Part II*, https://www.taxpayeradvocate.irs.gov/news/nta-blog/nta-blog-transcripts-pt2/2021/10/ (visited Apr. 14, 2025).

<u>Plaintiff's 2017 Overpayment</u>

28. For its 2017 tax year, Plaintiff reported income tax, determined without regard to any MRT liability, in the amount of $364,875,430 ("2017 regular tax liability").

29. For its 2017 tax year, Plaintiff elected to apply a $456,570,424 overpayment from its 2016 tax year to its 2017 estimated tax. This credit was applied to Plaintiff's 2017 estimated tax with effect on May 15, 2017 and is identified on the 2017 Transcript using TC 716.

30. In addition, during 2017, Plaintiff made two payments of 2017 estimated tax, each of which is shown on Plaintiff's IRS Account Transcript for its 2017 taxable year ("2017 Transcript").

   a. Plaintiff made an estimated tax payment of $555,000,000 on June 15, 2017. This estimated tax payment is identified on the 2017 Transcript using TC 660.

   b. Plaintiff made an estimated tax payment of $670,000,000 on September 15, 2017. This estimated tax payment is identified on the 2017 Transcript using TC 660.

31. Finally, Plaintiff timely filed Form 4136 (Credit for Federal Tax Paid on Fuels) reporting a $3,617,030 refundable fuel credit. This refundable fuel credit is identified on the 2017 Transcript using TC 766.

32. In the aggregate, Plaintiff made payments in satisfaction of its 2017 regular tax liability of $1,685,187,454.

33. On January 16, 2018, Plaintiff applied for a quick refund of its overpayment of 2017 estimated tax, by filing Form 4466 with the IRS Service Center in Ogden, Utah.

34. On March 1, 2018, the IRS refunded $1,200,000,000 of Plaintiff's 2017 estimated tax. This refund is identified on Plaintiff's 2017 Transcript using TC 840.

35. As a consequence of the March 1, 2018 refund, Plaintiff's total remaining payments of its 2017 regular tax liability equaled $485,187,454 ("2017 regular tax payments").

36. Plaintiff's 2017 regular tax payments exceeded its 2017 regular tax liability by $120,312,024.

37. On its 2017 federal income tax return, Plaintiff also reported an MRT liability computed with respect to the 2017 tax year of $234,237,803.

38. Plaintiff timely elected to pay that 2017 MRT liability in eight installments pursuant to section 965(h).

39. Plaintiff's MRT installments with respect to 2017 were (and are) due as follows:

| Installment Due Date | Installment Amount |
|---|---|
| April 17, 2018 | $18,746,224 (8%) |
| April 15, 2019 | $18,746,224 (8%) |
| July 15, 2020 | $18,746,224 (8%) |
| April 15, 2021 | $18,746,224 (8%) |
| April 18, 2022 | $18,746,224 (8%) |
| April 18, 2023 | $35,149,170 (15%) |
| April 15, 2024 | $46,865,561 (20%) |
| May 1, 2025 | $58,581,952 (25%) |

40. The total amount due from Plaintiff on the due date for its 2017 tax return (April 17, 2018) equaled $383,621,654 ("2017 entire tax liability") and was composed of:

    a. Plaintiff's 2017 regular income tax liability of $364,875,430; and

    b. Plaintiff's $18,746,224 first installment of the MRT computed with respect to tax year 2017.

41. On April 17, 2018, Plaintiff timely made a separate payment of $27,000,000 in satisfaction of its first MRT installment of $18,746,224 with respect to the 2017 tax year.

42. Plaintiff's first MRT installment payment with respect to the 2017 tax year exceeded the amount due under section 965(h).

43. Plaintiff's first MRT installment payment with respect to the 2017 tax year complied with the informal guidance set forth in the 2017 FAQs.

   a. Plaintiff issued a payment separate from its 2017 regular tax payments.

   b. Plaintiff labeled its payment of section 965 tax using the "designated payment code" of 09650.

44. The IRS failed to apply the $27,000,000 installment payment Plaintiff made and labeled as a payment of MRT to Plaintiff's first MRT installment.

45. On information and belief, the IRS initially treated the $27,000,000 installment payment as an amount that Plaintiff paid toward its 2017 regular tax liability. Plaintiff's 2017 Transcript shows a $27,000,000 "Payment" posted with TC 670.

46. The IRS subsequently coded the $27,000,000 installment payment as an amount transferred from Plaintiff's 2017 tax year to Plaintiff's 2018 tax year.

47. On November 5, 2019, the IRS refunded $27,000,000 to Plaintiff without interest. This refund is reflected in Plaintiff's IRS Account Transcript for its 2018 taxable year ("2018 Transcript"). The refund is identified using TC 840.

48. If the IRS had properly applied Plaintiff's $27,000,000 MRT installment payment, Plaintiff would have fully satisfied its first MRT installment liability of $18,746,224 with such payment. In such case, Plaintiff's 2017 regular tax payments of $485,187,454 would have exceeded the remaining segment of Plaintiff's 2017 entire tax liability by $120,312,024 ("2017 overpayment").

49. Plaintiff elected to credit part of its 2017 overpayment against its 2018 estimated tax.

50. The IRS did not honor Plaintiff's election to credit its 2017 overpayment against its 2018 estimated tax.

51. The IRS retained Plaintiff's 2017 overpayment and credited such amount against installments of MRT liability, when each such installment became due.

52. Specifically, the IRS applied Plaintiff's 2017 overpayment as follows:

| Due Date of Installment | Amount of Installment Due | 2017 Overpayment Applied on Installment Due Date | Remaining 2017 Overpayment After Installment Satisfied |
|---|---|---|---|
| April 17, 2018 | $18,746,224 | $18,746,224 | $101,565,799 |
| April 15, 2019 | $18,746,224 | $18,746,224 | $82,819,575 |
| July 15, 2020 | $18,746,224 | $18,746,224 | $64,073,351 |
| April 15, 2021 | $18,746,224 | $18,746,224 | $45,327,127 |
| April 18, 2022 | $18,746,224 | $18,746,224 | $26,580,903 |
| April 18, 2023 | $35,149,170 | $15,149,170 ($20,000,000 satisfied with separate installment payment) | $11,431,733 |
| April 15, 2024 | $46,865,561 | $4,488,531 ($42,377,030 satisfied with separate installment payment) | $6,943,202 |

53. For each MRT installment, Plaintiff's 2017 Transcript reflects an administrative credit in the amount of the installment, identified by TC 766. On the date each installment is due, Plaintiff's 2017 Transcript records a reversal of that administrative credit with TC 767, which documents the crediting against that MRT installment of either (i) a portion of Plaintiff's 2017 overpayment or (ii) Plaintiff's separate installment payments (in the case of the sixth and seventh installments).

54. For its sixth MRT installment, Plaintiff separately paid $20,000,000 on April 14, 2023.

11

55. For its seventh MRT installment, Plaintiff separately paid $42,377,030 on April 12, 2024.

56. As a result of the IRS crediting $94,622,597 of Plaintiff's 2017 overpayment against its MRT installments due in 2019, 2020, 2021, 2022, 2023, and 2024, Defendant had use of that amount of Plaintiff's 2017 overpayment from April 17, 2018 through the dates on which the IRS credited each applicable amount against an MRT installment due in those years.

57. As a result of retaining $6,943,202 of Plaintiff's 2017 overpayment, with the announced policy of crediting such amount on May 1, 2025 to satisfy part of the eighth MRT installment due on that date, Defendant will have had use of that amount from April 17, 2018 through May 1, 2025.

58. As a result of the IRS failing to apply Plaintiff's $27,000,000 MRT installment payment to Plaintiff's first installment of MRT due on April 17, 2018, Defendant instead applied $18,746,224 of Plaintiff's 2017 overpayment to Plaintiff's first installment of the MRT. Defendant had use of such amount from April 17, 2018 through the date on which the IRS refunded Plaintiff's installment payment (that is, through November 5, 2019).

### Plaintiff's 2018 Overpayment

59. For its 2018 tax year, Plaintiff reported income tax, determined without regard to any MRT liability in the amount of $645,266,283 ("2018 regular tax liability").

60. During 2018, Plaintiff made four payments of 2018 estimated tax, each of which is identified on the 2018 Transcript with TC 660:

   a. Plaintiff made an estimated tax payment of $235,000,000 on April 17, 2018.

   b. Plaintiff made an estimated tax payment of $150,000,000 on June 13, 2018.

   c. Plaintiff made an estimated tax payment of $280,000,000 on September 14, 2018.

    d. Plaintiff made an estimated tax payment of $130,000,000 on December 13, 2018.

61. In addition, Plaintiff timely filed Form 4136 (Credit for Federal Tax Paid on Fuels) reporting a $1,669,499 refundable fuel credit. This refundable fuel credit is identified on the 2018 Transcript using TC 766.

62. In the aggregate, Plaintiff made payments in satisfaction of its 2018 regular tax liability of $796,669,499 ("2018 regular tax payments").

63. Plaintiff's 2018 regular tax payments exceeded Plaintiff's 2018 regular tax liability by $151,403,217.

64. On its 2018 federal income tax return, Plaintiff also reported an MRT liability computed with respect to the 2018 tax year of $56,888,215.

65. Plaintiff timely elected to pay that 2018 MRT liability in eight installments pursuant to section 965(h).

66. Plaintiff's MRT installments with respect to 2018 were (and are) due as follows:

| Installment Due Date | Installment Amount |
|---|---|
| April 15, 2019 | $4,551,057 (8%) |
| July 15, 2020 | $4,551,057 (8%) |
| April 15, 2021 | $4,551,057 (8%) |
| April 18, 2022 | $4,551,057 (8%) |
| April 18, 2023 | $4,551,057 (8%) |
| April 15, 2024 | $8,533,232 (15%) |
| May 1, 2025 | $11,377,643 (20%) |
| April 15, 2026 | $14,222,055 (25%) |

67. The total amount due from Plaintiff on the due date for its 2018 tax return (April 15, 2019) equaled $668,523,564 ("2018 entire tax liability") and was composed of:

    a. Plaintiff's 2018 regular income tax liability of $645,266,283;

    b. Plaintiff's $4,511,057 first installment of the MRT computed with respect to the 2018 tax year; and

13

    c. Plaintiff's $18,746,224 second installment of the MRT computed with respect to the 2017 tax year.

68. As discussed above, on April 15, 2019, the IRS credited $18,746,224 of Plaintiff's 2017 overpayment against Plaintiff's second installment of the MRT computed with respect to the 2017 tax year.

69. On the due date for the 2018 tax return, as well as the date on which Plaintiff filed its 2018 tax return, the $27,000,000 MRT installment payment transferred from the 2017 tax year was available to satisfy Plaintiff's $4,511,057 first installment of the MRT computed with respect to the 2018 tax year. The IRS failed to apply any of the $27,000,000 MRT installment payment.

70. If the IRS had properly applied Plaintiff's $27,000,000 MRT installment payment, Plaintiff would have fully satisfied its first MRT installment (computed with respect to tax year 2018) with such standalone payment. In such case, Plaintiff's 2018 regular tax payments of $796,669,499 would have exceeded the remaining portion of its 2018 entire tax liability by $151,403,216 ("2018 overpayment").

71. Plaintiff elected to have part of its 2018 overpayment credited against its 2019 estimated tax.

72. The IRS retained $56,888,215 of Plaintiff's 2018 overpayment and credited such amounts against installments of 2018 MRT liability, when each such installment became due.

73. As a result of the IRS crediting $26,737,460 of Plaintiff's 2018 overpayment against its MRT installments due in 2020, 2021, 2022, 2023, and 2024, Defendant had use of that amount of Plaintiff's 2018 overpayment from April 15, 2019 through the dates on which the IRS credited each applicable amount against an MRT installment due in those years.

74. As a result of retaining $25,599,698 of Plaintiff's 2018 overpayment, with the announced policy of crediting such amount on May 1, 2025 and April 15, 2026 to satisfy the seventh and eighth MRT installments due on those dates, Defendant will have had use of such amounts from April 17, 2018 to the dates of such installments.

75. As a result of the IRS failing to apply any part of Plaintiff's $27,000,000 MRT installment payment (which the IRS had transferred to the 2018 tax year) to Plaintiff's first installment of MRT due on April 15, 2019, Defendant instead applied $4,551,057 of Plaintiff's 2018 overpayment to Plaintiff's first installment of the MRT (computed with respect to the 2018 tax year). Defendant had the use of such amount from April 15, 2019 through the date on which the IRS refunded Plaintiff's installment payment (that is, through November 5, 2019).

## CLAIM TO RECOVER ADDITIONAL OVERPAYMENT INTEREST

### Count I

76. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1-75 of this Complaint.

77. Plaintiff's 2017 overpayment constituted an overpayment within the meaning of sections 6402 and 6611.

78. Plaintiff is the sole taxpayer that has made the overpayments of tax described above, is the sole owner of this claim, and has made no assignment of this claim. No action on this claim has been taken by the Congress of the United States or any other department of the Defendant, other than the actions of the IRS described above. No suit or other processes by Plaintiff is pending on this claim in any other court.

79. Plaintiff is entitled to overpayment interest in the amount of $9,065,014.08, plus additional overpayment interest that will accrue through the date the overpayment interest is paid to Plaintiff.

## Count II

80. Plaintiff incorporates by reference and realleges all allegations in paragraphs 1-75 of this Complaint.

81. Plaintiff's 2018 overpayment constituted an overpayment within the meaning of sections 6402 and 6611.

82. Plaintiff is the sole taxpayer that has made the overpayments of tax described above, is the sole owner of this claim, and has made no assignment of this claim. No action on this claim has been taken by the Congress of the United States or any other department of the Defendant, other than the actions of the IRS described above. No suit or other processes by Plaintiff is pending on this claim in any other court.

83. Plaintiff is entitled to overpayment interest in the amount of $7,057,339.86, plus additional overpayment interest that will accrue through the date the overpayment interest is paid to Plaintiff.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff United Parcel Service, Inc. requests:

(a) That this Court order the IRS to pay overpayment interest in the amount of at least $16,122,353.94, plus additional overpayment interest that will accrue through the date the overpayment interest is paid to Plaintiff;

(b) such costs and attorneys' fees as are available; and

(c) such other and further relief that this Court deems equitable and proper.

REDACTED

DATED: April 14, 2025                    Respectfully submitted,

                                                 */s/ Robert J. Kovacev*
                                                 Robert J. Kovacev
                                                 Attorney of Record for Plaintiff

                                                 MILLER & CHEVALIER CHARTERED
                                                 900 16th Street NW
                                                 Washington, D.C. 20006
                                                 Tel. (202) 626-5857
                                                 Fax. (202) 626-5801
                                                 Email:  rkovacev@milchev.com

                                                 OF COUNSEL:

                                                 Jeffrey M. Tebbs
                                                 Samuel A. Lapin
                                                 MILLER & CHEVALIER CHARTERED
                                                 900 16th Street NW
                                                 Washington, D.C. 20006
                                                 Tel. (202) 626-5800
                                                 Fax. (202) 626-5801
                                                 Email: jtebbs@milchev.com
                                                 Email: slapin@milchev.com